**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 14-02672-JW |
| | Chapter 13 |
| Larry L. Sanders, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court for confirmation of the Second Amended Chapter 13 Plan filed by Larry L. Sanders ("Debtor") on August 27, 2014. At the confirmation hearing, the Trustee argued that the treatment of the secured claim of Enterprise Bank of South Carolina ("Enterprise") in Debtor's Plan was improper because it proposed to pay Enterprise's secured claim over the term of the Plan with no interest. Enterprise did not file an objection to the Plan and did not appear at the hearing. After considering the record in this case and the arguments and evidence presented at the hearing, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).[1]

**FINDINGS OF FACT**

1. Enterprise is the holder of a real estate note ("Note") executed by Debtor on October 15, 2008 in the original principal amount of $35,199.00. Under the terms of the Note, Debtor agreed to "pay interest on the outstanding principal balance from October 19, 2008 at the rate of 8.250% per year until paid in full" and to make "59 monthly payments of $431.70 beginning 11-14-2008." In addition the Note required Debtor to make a balloon payment of $21,595.03 on October 14, 2013. The Note is

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such; and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

Entered: 09/26/2014

secured by a mortgage on real property located at 1252 Dove Road, Barnwell, SC 29812 and by a security agreement on a 1987 Redman Doublewide Mobile Home ("Mobile Home") located on the real property. Enterprise's lien is also recorded on the Certificate of Title to the Mobile Home.

2. Pursuant to its terms, the Note matured on October 14, 2013 and the outstanding amounts became immediately due, with interest continuing to accrue on the outstanding principal balance until paid in full.

3. On May 2, 2014, Debtor filed a voluntary petition ("Petition") for relief under Chapter 13 of the Bankruptcy Code. Simultaneously with the Petition, Debtor filed his schedules, statements and Chapter 13 Plan. It appears from the Schedules that the 1252 Dove Road Property and Mobile Home together serve as the Debtor's principal residence ("Residence"). In Schedule A, Debtor lists the Residence as having a value of $60,000, with a secured claim of $30,000.[2] The Chapter 13 Plan proposed to make payments of arrearage to Enterprise through the Trustee of $264.00 per month with 0% interest over a period of 57 months. It further proposed for Debtor to pay directly to Enterprise one payment representing the non-arrearage portion of the claim in June of 2014.[3] According to the Certificate of Service, Enterprise was served with a copy of the plan.

4. On June 18, 2014, Enterprise, through its counsel, E.W. Bennett, Jr., filed a proof of claim ("Proof of Claim") in the total amount of $25,738.07, with arrearage in the amount of $25,492.90, and interest due at the rate of 8.25% per year. The Proof of

---

[2] It appears that the $60,000 value represents the value of the land and the Mobile Home, as the Mobile Home is not separately listed elsewhere in the Schedules.
[3] Debtor's counsel advised at the confirmation hearing that the Debtor made this payment in the amount of $245.17 in June of 2014.

2

Claim indicates that Enterprise's claim is fully secured. A Mortgage Proof of Claim Attachment is attached to the Proof of Claim which indicates that the principal due is $23,580.71, the total interest due as of June 17, 2014 is $2,025.36, and late charges are due in the amount of $132.00. A copy of the Note, Mortgage, Security Agreement, and Certificate of Title are also attached to the Proof of Claim.

5. On July 29, 2014, Debtor filed the Amended Plan, which extended the term of the plan to 60 months and increased the payment to Enterprise through the Trustee for the arrearage to $425.00 per month with 0% interest. The Amended Plan eliminated the provision requiring Debtor to pay Enterprise the non-arrearage payment in June of 2014 as "N/A." According to the Certificate of Service, Enterprise was served with a copy of the Amended Plan.

6. On August 27, 2014, Debtor filed the Second Amended Plan ("Plan") which continues to provide for payments to Enterprise through the Trustee of arrearage in the amount of $425.00 per month for 60 months with 0% interest, but restores the provision from the first plan requiring Debtor to pay directly to Enterprise the non-arrearage payment in June 2014 (which had already been paid by Debtor at the time the Plan was filed). According to the Certificate of Service, Enterprise and its counsel, E.W. Bennett, Jr., were served with a copy of the plan.

7. No creditor, including Enterprise, filed an objection to the Plan, but the Chapter 13 Trustee opposed confirmation because the Plan did not comply with §§ 1322 and 1325.

8. The confirmation hearing was held on August 28, 2014.

3

**CONCLUSIONS OF LAW**

The Trustee asserts that the Plan filed August 27, 2014 does not meet the requirements for confirmation under 11 U.S.C. § 1325 because the treatment proposed for Enterprise's secured claim is not properly characterized as payment of an arrearage but is actually a reamortization of the principal debt owed to Enterprise, which requires the payment of interest. Since the debt has matured and is presently due and payable in full, the effect of Debtor's treatment under the Plan is to create new payment terms for the debt by extending the term of the loan by 60 months and providing for a monthly payment schedule to pay off the amount due. The Plan does not propose to pay post-petition or post-confirmation interest on Enterprise's allowed secured claim, which is oversecured. Debtor contends that this treatment is authorized because he is making payment of an arrearage pursuant to 11 U.S.C. § 1322(e) and that, under the terms of the Note, Enterprise would not be entitled to interest. Debtor further argues that the treatment should be allowed because Enterprise has not objected to the plan.

    I.    **Entitlement to Interest under § 506(b)**

Under 11 U.S.C. § 506(b), a creditor with an allowed secured claim that is secured by property the value of which is greater than the amount of such claim "shall be allowed … interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." This section allows an oversecured creditor to recover post-petition interest as part of its allowed claim at the contract rate until the effective date of the plan. In re Keita, No. 12-19970-PM, 2013 WL 1788033, at *3 (Bankr. D.Md. Apr. 26, 2013) (citing In re Garner, 663 F.3d 1218, 1219-20 (11th Cir. 2011)); *see also* In re Stringer, 508 B.R. 668, 671 (Bankr. N.D.Miss. 2014)

4

(stating that an oversecured creditor is entitled to interest at the contract rate during the period between the filing of the petition and confirmation of the chapter 13 plan); In re Hugee, 54 B.R. 676 (Bankr. D.S.C. 1985) (holding that an oversecured creditor is entitled to receive the contract rate of interest until the effective date of the plan and that from that time forward, the oversecured creditor is entitled to receive the discount rate).  In this case, the Note provides for interest on the principal balance at 8.25% until paid in full.

    **II.**    **11 U.S.C. § 1322(e)**

Debtor asserts that Enterprise's entitlement to interest is instead governed by the contract under § 1322(e), and disputes that the contract requires interest.  Section 1322(e) of the Bankruptcy Code provides that "[n]otwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to *cure a default*, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." In this case, Debtor is not attempting to cure a default.  Enterprise's loan matured pre-petition by its terms and is presently due and payable in full.  Debtor's Plan proposes to change the payment terms and interest rate, thereby replacing the original agreement with a new agreement that is set forth in the Plan.

Section 1322(e) applies to situations where a debtor's plan intended to cure a default and reinstate the pre-bankruptcy agreement as if the default had never occurred. In re Bowers, C/A No. 96-77985-JW, slip op. (Bankr. D.S.C. Jan. 24, 1997) (finding that debtors who proposed in their plan to pay a secured creditor's loan over the term of a 48-month plan, whose loan term ended 29 months into the plan under its pre-bankruptcy agreement, had not "proposed in a plan to cure a default" as required by § 1322(e) and

5

had instead replaced the original agreement with a new agreement). To reinstate Enterprise's pre-bankruptcy agreement would not reinstate the loan because it has fully matured and no future monthly payment schedule is contemplated under the agreement. Accordingly, the Court concludes that § 1322(e) does not apply. Moreover, even if § 1322(e) did apply, Debtor's argument that he is not obligated to pay interest is contradicted by the express terms of the agreement with Enterprise, which provides for interest on the principal balance until paid in full at the rate of 8.25%.[4]

### III.    11 U.S.C. § 1322(c)(2)

The Court believes the payment of Enterprise's claim is instead governed by 11 U.S.C. § 1322(c)(2), which provides:

> [I]n a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim, as modified pursuant to section 1325(a)(5) of this title.

The Court reaches this conclusion based on Debtor's treatment of the Mobile Home in his Schedules as part of the real property that is his principal residence, since the Mobile Home appears to have been included by Debtor in his calculation of the value of the real property and is not separately listed as personal property in Schedule B. Relying on this treatment, the Court finds for purposes of this order that the Mobile Home is attached to the real property. See 11 U.S.C. § 101(13A) (defining the term, "debtor's principal residence"); In re Ennis, 558 F.3d 343, 346 (4th Cir. 2009) (stating that property can be a

---

[4] While Debtor's counsel asserted at the hearing that the proof of claim did not provide a breakdown of the debt into principal and interest due, the Court's review of the proof of claim found such a breakdown, which indicates that the principal due, exclusive of interest and other charges, is $23,580.71.

debtor's principal residence if it is personal property, but it cannot be subject to the anti-modification provision unless it is also real property).[5]

Section 1322(c)(2) allows a debtor to modify mortgages on which the last payment on the original payment schedule is due before the date on which the final payment under the chapter 13 plan is due by proposing in the plan to pay the mortgage creditor in full over the course of the bankruptcy. In re Brown, 428 B.R. 672, 675 (Bankr. D.S.C. 2010). This subsection has been interpreted to apply to both mortgages that mature post-petition and mortgages that matured or ballooned prior to the petition date. Id. at 676 (applying § 1322(c)(2) to a reverse mortgage that accelerated pre-petition due to the death of the obligor) (citing In re Escue, 184 B.R. 287 (Bankr. M.D. Tenn. 1995) ("[Section 1322](c)(2) appears to contemplate mortgages which mature post-petition, but the Congressional intent of this statute when considered in light of the other provisions of Chapter 13, and the overall objectives of bankruptcy, suggest that Congress also intended for debtors to be able to cure defaults on short-term mortgages which mature or balloon prior to the petition date.")). Since Enterprise's mortgage loan matured pre-petition and the mortgage is secured by "[D]ebtor's principal residence," as defined under 11 U.S.C. § 101 (13A), § 1322(c)(2) would apply to allow the Plan to modify Enterprise's claim in accordance with § 1325(a)(5).

### IV.    11 U.S.C. § 1325(a)

Before analyzing § 1325(a)(5), which expressly addresses treatment of allowed secured claims, the Court must consider § 1325(a)(1), which requires the plan to

---

[5] If the Mobile Home is not attached and is thus separate personal property securing Enterprise's lien, Enterprise's claim may be subject to modification under § 1322(b)(2) because, in that case, its claim would not be "secured only by a security interest in real property that is the debtor's principal residence." See 11 U.S.C. § 1322(b)(2). Enterprise's claim would nevertheless be entitled to interest.

7


otherwise comply with the provisions of the Bankruptcy Code. The Trustee correctly argues the Plan fails to meet the requirements of § 1325(a)(1) because it fails to provide for post-petition interest through confirmation to Enterprise in accordance with § 506(b) and thereafter, fails to provide for post confirmation interest in accordance with § 1325(a)(5)(B), if Debtor is seeking to modify Enterprise's claim to pay at a more favorable interest rate. Debtor's proposal to pay the full amount of the claim without interest does not provide Enterprise with the present value of its allowed claim as of the effective date of the plan. See Till v. SCS Credit Corp, 541 U.S. 465, 474 (2004) (finding that interest at the prime plus rate must be applied under § 1325(a)(5)(B) to ensure the property to be distributed to a particular secured creditor over the life of a bankruptcy has a total value, as of the effective date of the plan that equals or exceeds the value of the creditor's allowed secured claim); In re Bagne, 219 B.R. at 277 ("If the claim meets the criteria that the "last payment on the original payment schedule is due before the final payment under the plan is due, the treatment of it must confirm to the provisions of § 1325(a)(5), and § 1325(a)(5) requires a 'market rate' of interest, not the contract rate."); In re Hubbell, 496 B.R. at 790 (finding that varying the contractual rate of interest, in favor of a discount rate is a permissible modification of a secured claim under § 1322(c)(2) and § 1325(a)(5)). Pursuant to SC LBR 3015-6 and Amended Operating Order 09-02, the Court has established a presumed effective interest rate for paying the present value of secured claims as required by 11 U.S.C. § 1325(a)(5)(B)(ii) for Chapter 13 cases filed in this District, which is presently set at 5.25%.

With this defect having been brought to the Court's attention and recognizing the Court's duty to ensure compliance with the Bankruptcy Code before confirmation as

8

expressed by the U.S. Supreme Court in United Student Aid Funds, Inc. v. Espinosa, the Court agrees with the Trustee and finds that the Plan is not confirmable as a result of this defect. See 559 U.S. 260 (2010) (instructing bankruptcy judges "to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue").

## CONCLUSION

Based on the foregoing, the Court concludes that Debtor's failure to provide for the payment of interest on Enterprise's claim in his Chapter 13 Plan precludes confirmation. Accordingly, Debtor is ordered to file an amended plan which meets the requirements for confirmation within ten days from the date of the entry of this Order.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**09/26/2014**



US Bankruptcy Judge
District of South Carolina

Entered: 09/26/2014